<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| KATHRYN MARTONE, | : : : | |
| Plaintiff, | : : | |
| v. | : : | Case No. 2:19-cv-21011-BRM-SCM |
| JET AVIATION FLIGHT SERVICES INC., *et al.*, | : : : : | |
| | : | **OPINION** |
| Defendants. | : : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion filed by Defendants Jet Aviation Flight Services, Inc. ("JAFS"), Russel Okrent ("Okrent"), and Leon and Debra Black (the "Blacks") (collectively, "Defendants") to dismiss Plaintiff Kathryn Martone's ("Martone" or "Plaintiff") Complaint. (ECF No. 13.) Martone filed an Opposition to the Motion to Dismiss. (ECF No. 23.) Also before the Court is Martone's Motion for Leave to Amend the Complaint. (*Id.*) Having reviewed the papers filed in connection with the motion and having heard oral argument on June 11, 2020, pursuant to Federal Rule of Civil Procedure 78(a), for the reasons set forth below and for good cause appearing, Defendants' Motion to Dismiss is **GRANTED WITHOUT PREJUDICE**, and Martone's request for leave to amend the Complaint is **GRANTED.**

**I.     BACKGROUND**

In considering this Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

This matter stems from the termination of Martone, a Cabin Safety Attendant, from JAFS, a private airline company that provides charter services for private business aircrafts, in alleged retaliation for reporting unsafe operational practices as well as unlawful discrimination and harassment. (ECF No. 1 ¶¶ 26, 27, 30.) Martone, whose duties included ensuring passenger safety and comfort on flights, worked with three other crew members, all of whom were pilots, to staff a private aircraft owned and chartered by the Blacks. (*Id.* ¶¶ 18-19, 30-31.)

Martone alleges she was subjected to verbal abuse and harassment by her crew member, Okrent,[1] on a daily basis. (*Id.* ¶ 38.) In addition to being frequently left out of crew briefings, Martone often requested weather and turbulence prediction reports from Okrent to no avail. (*Id.* ¶¶ 42, 45-47.) Martone subsequently became concerned about the safety of the plane and brought these concerns to the Lead Captain. (*Id.* ¶ 51.) When the unlawful conduct continued, Martone escalated her complaint to the Cabin Attendant Supervisor. (*Id.* ¶ 60.)

On Martone's final trip with Defendants, Okrent pulled her aside in a hotel lobby, and a heated verbal altercation ensued. (*Id.* ¶¶ 68-77.) A hotel manager asked the pair to take their conversation elsewhere. (*Id.*) Martone contacted Human Resources immediately following the altercation to report the incident. (*Id.* ¶ 79.) Later that same day, Martone met in person with a Human Resources Representative and was informed she was being grounded because of the incident at the hotel. (*Id.* ¶¶ 82-83.) Defendants terminated Martone ten days later. (*Id.* ¶ 101.)

On December 4, 2019, Martone filed a two-count Complaint against Defendants. (ECF No. 1.) Defendants filed a Motion to Dismiss the Complaint on March 18, 2020. (ECF No. 13.) On April 20, 2020, Martone filed an Opposition to the Motion to Dismiss. (ECF No. 23.)

---

[1] Okrent is a pilot employed by JAFS who staffed the Blacks' private aircraft. (ECF No. 1 ¶ 16.)

## II. LEGAL STANDARD

### A. Rule 12(b)(6) Standard

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Id*.

### B. Motion to Amend

Amendments of pleadings are governed by Federal Rules of Civil Procedure 15 and 16. A motion to amend a pleading that is filed before the deadline for amendments of pleadings in a Rule 16 Scheduling Order will be governed by Federal Rule of Civil Procedure 15(a) only. *See* Fed. R. Civ. P. 15. Pursuant to Rule 15(a), a "party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." *Id*.

"The grant or denial of leave to amend is a matter committed to the sound discretion of the district court." *Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993). The Third Circuit has adopted a liberal approach under Rule 15 to the amendment of pleadings to ensure that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 487 (3d Cir. 1990) (internal citations omitted). The burden is generally on the party opposing the amendment to demonstrate why the amendment should not be permitted. *Forman v. Davis*, 371 U.S. 178, 180 (1962). Leave to amend a pleading may be denied where the court finds: (1) undue delay; (2) undue prejudice to the non-moving party; (3) bad faith or dilatory motive; or (4) futility of amendment. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

### III. DECISION

Martone asserts she was terminated from her job as a Cabin Safety Attendant in violation of the New Jersey Conscientious Employee Protection Act, N.J. Stat. Ann. 34:19-1, *et seq*. ("CEPA") and the New Jersey Law Against Discrimination, N.J. Stat. Ann. 10:5-1, *et seq*. ("NJLAD"). (ECF No. 1 ¶ 2.) Defendants first contend Martone's Complaint against the Blacks must be dismissed because the Blacks are not joint employers and consequently are not individually liable to Martone under CEPA and NJLAD. (ECF No. 13-1 at 13.) Defendants also argue Martone's Complaint should be dismissed in its entirety because she has not properly stated a claim under either CEPA or NJLAD. (*Id.* at 11, 19, 26.) The Court will first address the joint employment issue then discuss the CEPA and NJLAD claims.

#### A. Joint Employment

As a threshold matter, a plaintiff must first demonstrate an employment relationship to maintain claims under CEPA and NJLAD. *See generally* N.J. Stat. Ann. 34:19-3 and N.J. Stat. Ann. 10:5-12. Here, Martone argues JAFS and the Blacks were joint employers. (ECF No. 1 ¶¶ 27-28.) Defendants dispute the joint employment relationship, further clarifying during oral argument that the Blacks were merely owners of the aircraft on which Martone worked while JAFS was solely responsible for employing Martone as a Cabin Safety Attendant.

Analysis of a "joint employment" relationship for the purposes of CEPA and NJLAD requires fact intensive analysis of twelve factors[2] set forth in the *Pukowsky v. Caruso*. 711 A.2d

---

[2] The twelve-factor totality of the circumstances requires a court to consider: "(1) the alleged employer's right to control the means and manner of the worker's performance; (2) the kind of occupation-supervised or workplace; (3) skill; (4) who furnishes the equipment and workplace; (5) the length of time in which the individual has worked; (6) the method of payment; (7) the manner of termination of the work relationship; (8) whether there is annual leave; (9) whether the work is an integral part of the business of the 'employer;' (10) whether the worker accrues retirement

398, 404 (N.J. Super. Ct. App. Div. 1998); *see, e.g., Kurdyla v. Pinkerton Sec.*, 197 F.R.D. 128, 136 (D.N.J. 2000) ("Given the fact-intensive nature of the analysis and the number and range of factors to consider, this Court concludes that it is inappropriate to grant a motion to dismiss at this early stage."); *Annen v. Morgan Tech. Ceramics*, 2019 WL 325542, at *6 (D.N.J. Jan. 24, 2019) (stating *Pukowsky* analysis is fact intensive during evaluation of a motion to remand); *see also Sauter v. Colts Neck Volunteer Fire Co. No. 2*, 170 A.3d 351, 352 (N.J. Super. Ct. App. Div. 2017) (deciding employment status at summary judgment stage); *Pukowsky*, 711 A.2d at 399 (deciding employment status on motion for directed verdict). Because this question is presented on a motion to dismiss, the Court accepts Martone's factual allegations regarding joint employment as true and concludes "it is inappropriate to grant a motion to dismiss at this early stage," *Kurdyla*, 197 F.R.D. at 136, turning next to whether Martone has alleged sufficient facts for the CEPA and NJLAD claims against all Defendants.

**B. New Jersey Conscientious Employee Protection Act, N.J. Stat. Ann. 34:19-1 *et seq*.**

CEPA aims to afford broad protection to employees who report suspected violations of law or public policy from an employer's retaliatory acts. *See* N.J. Stat. Ann. 34:19-1 *et seq*. A plaintiff seeking to demonstrate a *prima facie* case under CEPA must allege: (1) the plaintiff reasonably believed the employer's conduct violated a law or regulation; (2) the plaintiff performed "whistle-blowing activity" as defined in CEPA; (3) an adverse employment action has been taken against her; and (4) the whistle-blowing activity caused such adverse employment action. *See Kolb v. Burns*, 727 A.2d 525, 530 (N.J. Super. Ct. App. Div. 1999); *Dzwonar v. McDevitt*, 828 A.2d 893, 900 (N.J. 2003). CEPA covers employee complaints about activities the employee reasonably

---

benefits; (11) whether the 'employer' pays social security taxes; and (12) the intention of the parties." *Pukowsky*, 711 A.2d at 404.

believes are: (1) in violation of a specific statute or regulation; (2) fraudulent or criminal; or (3) incompatible with policies concerning public health, safety or welfare or the protection of the environment. *See Estate of Roach v. TRW, Inc.*, 754 A.2d 544, 550 (N.J. 2000). However, "CEPA does not require that the activity complained of . . . be an actual violation of a law or regulation, only that the employee 'reasonably believes' that to be the case." *Id.* at 552.

Once a plaintiff has established a prima facie case under CEPA, courts employ the burden-shifting analysis that is used in federal discrimination cases involving "pretext" claims. *Blackburn v. United Parcel Servs., Inc.*, 179 F.3d 81, 92 (3d Cir. 1999). Under this test, "the burden of production shifts to the defendant to 'articulate some legitimate, nondiscriminatory reason' for its actions." *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 n.2 (3d. Cir. 1997) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Once the defendant articulates a legitimate reason for the adverse employment action, the burden shifts back to the plaintiff. *See id.* Then, "the plaintiff must convince the factfinder 'both that the reason [given by the employer] was false, and that [retaliation] was the real reason.'" *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

Here, Martone does not meet her burden to establish a prima facie case because she fails to demonstrate a causal connection between her whistleblowing activity and the adverse employment action. "To demonstrate causation, a plaintiff must show that the 'retaliatory discrimination was more likely than not a determinative factor in the decision.'" *Robles v. U.S. Envtl. Univ. Svcs., Inc.*, 469 F. App'x 104, 108 (3d Cir. 2012) (quoting *Donofry v. Autotote Sys., Inc.*, 795 A.2d 260, 271 (N.J. Super. Ct. App. Div. 2001)). In analyzing the causal link between a protected activity and adverse employment action, courts often look to chronological proximity and evidence of ongoing antagonism. *Abramson v. William Paterson College*, 260 F.3d 265, 288

(3d. Cir. 2001). Temporal proximity raises an inference that the protected activity was the likely reason for the adverse action. *Campbell v. Abercrombie & Fitch, Co.*, Case No. 03-3159, 2005 U.S. Dist. LEXIS 11507 (D.N.J. June 9, 2005) (citing *Kachmar v. Sungard Data Sys.*, 109 F.3d 173, 177 (3d Cir. 1997)); *Jalil v. Avdel Corp.*, 873 F.3d 701, 708 (3d Cir. 1989). The Supreme Court has emphasized that "cases which accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

However, "[i]t is important to emphasize that it is causation, not temporal proximity itself, that is an element of plaintiff's *prima facie* case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn." *Johnson-Winters v. Redner's Mkt. Inc.*, 610 F. App'x 149, 154 (3d Cir. 2015). In addition, "[w]hen there may be valid reasons why the adverse employment action was not taken immediately, the absence of immediacy between the cause and effect does not disprove causation." *Id.*

Martone alleges she reported her concerns about "Mr. Okrent's blatant lack of interest in aviation safety" first to Lead Captain Chris Mihok ("Mihok"), then to Cabin Attendant Supervisor Dani Mickel ("Mickel"), and ultimately, to Human Resources. (ECF No. 1 ¶¶ 51, 60, 79-84.) She cites two incidents which she believes demonstrate Defendants' retaliatory conduct. First, Martone states that on September 5, 2019, following her complaints, she learned she was removed from a trip that had been scheduled for September 8, 2019. (*Id.* ¶ 87.) Second, Martone states she complained to Human Resources on September 17, 2019, following a verbal altercation in a hotel lobby between her and Okrent that became so heated it required the intervention of a hotel

manager. (*Id.* ¶¶ 77, 79-84.)  Following her report, Defendants first removed Martone from the upcoming flight schedule and then ultimately terminated her ten days later. (*Id.* ¶¶ 82-86, 89, 101.)

The Complaint is devoid of facts from which this Court could infer pretextual retaliation. For example, there is no allegation that Defendants offered inconsistent explanations for Martone's termination. *See Waddell v. Small Tube Prod. Inc.*, 799 F.2d 69, 73 (3d Cir. 1986) (finding it would be appropriate for a district court to take inconsistent explanations into account when looking for the causation necessary to satisfy a *prima facie* case). While Martone relies on the inference to be drawn from the timing between her complaints and her termination, she fails to allege facts that would show "either an (1) unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing." *Clark v. Philadelphia Hous. Auth.*, 701 F. App'x 113, 116 (3d Cir. 2017) (quoting *Budhun v. Reading Hosp. and Med. Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014)). Because courts are "reluctant to infer causal connection based on temporal proximity alone," *Budhun*, 765 F.3d at 258, Martone would need to allege more than a lapse of ten days between her final report and termination to render the timing unusually suggestive. *See, e.g., Shellenberger v. Summit Bancorp Inc.*, 318 F.3d 183, 189 (3d Cir. 2003) (holding the requisite causal link existed where an employee who engaged in protected conduct and whose boss made negative comments about that conduct was terminated ten days later); 597, 613 (D.N.J. 2003) (inferring causation where the plaintiff's employer cited plaintiff's decision to report a co-worker's possession of marijuana to the police less than two weeks earlier as one of the grounds for his termination); *Blevins v. Sew Eurodrive, Inc.*, Case No. 05-5261, 2007 US Dist. LEXIS 38516, at *12-13 (D.N.J. May 15, 2007) (describing the termination of an employee, who was fired six days after filing an assault and battery charge against a co-worker, as "one of those 'rare cases' where the decision to discharge takes place so

soon after the discovery of the participation in the protected conduct that the inference of discrimination is impossible to ignore"). Further, the factual record presented to this Court does not allege a pattern of antagonism emerged following Martone's complaints. Rather, Martone frames the incidents as ongoing discrimination and harassment not specifically tied to her whistleblowing activity.

Further, a plaintiff must be able to demonstrate the employer knew the employee engaged in protected activity. *Robles,* 469 F. App'x at 108 (citing *Mancuso v. Cty. of Atl. Cty.*, 193 F. Supp. 2d 789, 810 (D.N.J. 2002)). To the extent this claim is alleged against the Blacks, Martone's Complaint does not plausibly plead facts demonstrating they had knowledge or awareness of her whistleblowing activity. The Complaint states "Plaintiff disclosed and reported the perceived violations and incompatibilities to Lead Captain Chris Mihok, Cabin Attendant Supervisor Dani Mickel, and Human Resources." (ECF No. 1 ¶ 127.) Based on these facts alone, the Court is unable to infer either that Martone's disclosures and reports were subsequently made known to the Blacks or the Blacks otherwise knew Martone engaged in protected activity. Accordingly, Defendants' Motion to Dismiss Count One of the Complaint is **GRANTED WITHOUT PREJUDICE.**

### C.  New Jersey Law Against Discrimination, N.J. Stat. Ann. 10:5-1, *et seq.*

Martone also asserts two causes of action under NJLAD. (ECF No. 1 ¶ 134.) Martone first states Defendants subjected her to discrimination and harassment because of her gender.[3] (*Id.*) Martone also claims Defendants retaliated against her for reporting the discrimination and

---

[3] While Martone does not specifically raise a claim of hostile work environment in the Complaint, she addresses the issue in her Opposition to Defendants' Motion to Dismiss. (ECF No. 23-2 at 26-30.) Defendants argue the reported incidents are not severe or pervasive enough to maintain a hostile work environment claim. (ECF No. 13-1 at 23.) To the extent Martone is alleging hostile work environment claim, that claim is dismissed for the reasons discussed *infra*.

harassment. (*Id.*) Defendants argue these claims fail because Martone failed to plausibly plead facts necessary for the Court to infer the discriminatory intent required under this law.

The NJLAD, among other things, expressly prohibits discrimination in the workforce based on sex. *Clayton v. Cty. of Atl. Cty.*, 538 F. App'x 124, 128 (3d Cir. 2013) (citing *Lehmann v. Toys "R" Us, Inc.*, 626 A.2d 445, 452 (N.J. 1993)). The discrimination inquiry under NJLAD utilizes the federal framework of Title VII. *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 249 (3d Cir. 2006). Therefore, to plausibly plead a claim for sex-based discrimination, a plaintiff must allege facts demonstrating: "(1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination." *Tourtellotte v. Eli Lilly and Co.*, 636 F. App'x 831, 842 (3d Cir. 2016) (citing *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410-11 (3d Cir. 1999)). "The elements of [the] *prima facie* case, however, must not be applied woodenly, but must rather be tailored flexibly to fit the circumstances of each type of illegal discrimination." *Geraci v. Moody-Tottrup Int'l*, 82 F.3d 578, 581 (3d Cir. 1996).

If the plaintiff is able to establish a *prima facie* case,

> the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for the prohibited conduct." [*DiFederico v. Rolm Co.*, 201 F.3d 200, 205 (3d Cir. 2000)]. If the employer satisfies its burden, then the plaintiffs must prove by a preponderance of the evidence that the reason articulated by the defendant is purely pretextual. *Id.* Once the defendant articulates such a reason, the plaintiffs must meet their "ultimate burden of persuasion." *Id.* at 206 (internal quotation marks and citation omitted). In order to meet this burden, plaintiffs must "either directly . . . persuad[e] the court that the discriminatory reason more likely motivated the employer or [indirectly persuade the court] by showing that the employer's proffered explanation is unworthy of credence." *Id.* (internal quotation marks and citation omitted). The pretext analysis focuses the court's attention on whether the defendant's proffered reason was the real reason for its decision. *Id.*

*Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 785-86 (3d Cir. 2007).

Here, Martone fails to plausibly plead facts that could lead the Court to infer the requisite discriminatory intent. While Martone cites incidents of friction between her and other members of the crew, these incidents did not alter her terms of employment. *Tourtellotte*, 636 F. App'x at 843 (finding that a boss's comments about his employee's breastfeeding, appearance, need to consult with her husband about her career and schedule, and the comparably better evaluations of the employee's male partner did not alter terms of employment). Although Martone's Complaint demonstrates she suffered an adverse employment action, a *prima facie* case of sex discrimination nevertheless requires a plausible allegation of discriminatory intent. *See Cardenas v. Massey*, 269 F.3d 251, 262 (3d Cir. 2001). Even while accepting Martone's version of the facts as true, Martone's allegations are conclusory and fail to demonstrate gender-based animus.

Martone's retaliation claim fails for a similar reason. To state a *prima facie* case for retaliation under NJLAD, an employee must demonstrate: "(1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." *Abramson v. William Patterson College of N.J.*, 260 F.3d 265, 286 (3d Cir. 2001).[4] While Martone does allege she reported her concerns about Okrent's comments and behaviors to Human Resources, she fails to allege facts giving rise to an inference of retaliation such as "unduly suggestive" temporal proximity between the protected activity and adverse action. *Moody v. Atlantic Cty. Bd. of Ed.*, 870 F.3d 206, 221 (3d

---

[4] The same burden-shifting framework discussed *supra* would apply upon plaintiff's satisfaction of the *prima facie* case. *Viscik v. Fowler Equip. Co.*, 800 A.2d 826, 833 (N.J. 2002) (recognizing that New Jersey "courts have adopted the burden-shifting framework articulated in McDonnell Douglas").

12

Cir. 2017). Accordingly, Defendants' Motion to Dismiss Count Two of the Complaint is **GRANTED WITHOUT PREJUDICE.**

### D.  Motion to Amend

Martone seeks leave to amend her Complaint. Specifically, Martone seeks to add a claim pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"). The Title VII claim was not included in Martone's initial Complaint because Martone had not yet exhausted her administrative remedies. However, at oral argument, Martone's counsel represented to the Court he was in the process of obtaining a Right to Sue letter from the Equal Employment Opportunity Commission and requested leave to amend the Complaint. The Court determines that none of four grounds precluding a Motion to Amend–undue delay, undue prejudice to the non-moving party, bad faith or dilatory motive, or futility of amendment–are present in this case, and therefore Martone's request for leave to amend the Complaint is **GRANTED.**

### IV.  CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED WITHOUT PREJUDICE**, and Martone's Motion to Amend the Complaint is **GRANTED**. An appropriate order will follow.

Date: July 13, 2020                                                   */s/ Brian R. Martinotti*
                                                                                  **HON. BRIAN R. MARTINOTTI**
                                                                                  **UNITED STATES DISTRICT JUDGE**